In the District Court of the United States
For the District of South Carolina
BEAUFORT DIVISION

| | |
|---|---|
| **Sammie Dewitt, # 286209,** ) | |
| ) | Civil Action No. 9:06-1221-PMD-GCK |
| Petitioner, ) | |
| ) | |
| vs. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| **Warden, Lieber Correctional Institution,** ) | **OF THE MAGISTRATE JUDGE** |
| **State of South Carolina; and** ) | |
| **Attorney General of the State of** ) | |
| **South Carolina,** ) | |
| ) | |
| Respondents. ) | |
| ) | |

## I.   INTRODUCTION

The Petitioner, Sammie Dewitt ("Petitioner" or "Dewitt"), a state prisoner proceeding without the assistance of counsel, seeks *habeas corpus* relief under Title 28, United States Code Section 2254.  By definition, the relief which he seeks must be based upon a finding that he is being illegally detained in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2241(c)(3).  This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of Title 28, United States Code, Sections 636(b)(1)(A) and (B), and Local Civil Rules 73.02(B)(2)(c) and (e), D.S.C.  The above-named Respondents have filed a motion for summary judgment.  As this is a dispositive motion, this Report and Recommendation is submitted for review by the District Court.

## II.   *PRO SE* PETITION

Dewitt is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon*, 439 U.S. 970 (1978).  Under established local procedure in this judicial district, a careful review has been made of the *pro se* Petition herein pursuant to the procedural provisions of 28 U.S.C. § 1915, 28

U.S.C. § 1915A, and the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, Title I, § 104, 110 Stat. 1214.  This review has been conducted in light of the following precedents:  *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995) (*en banc*), *cert. denied*, 516 U.S. 1177 (1996); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).

*Pro se* pleadings are held to a less stringent standard than those drafted by attorneys, and a federal district court is charged with liberally construing a complaint or petition filed by a pro se litigant to allow the development of a potentially meritorious case.  *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *and Cruz v. Beto*, 405 U.S. 319 (1972).  When a federal court is evaluating a *pro se* complaint or petition, the plaintiff's or petitioner's allegations are assumed to be true.  *Fine v. City of New York*, 529 F.2d 70, 74 (2d Cir.1975).  Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal.  The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented.  *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999).  Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court.  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986).  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court.  *Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990).

### III.    HISTORY OF THE CASE

#### A.  Background

Petitioner is currently incarcerated in the Lieber Correctional Institution of the South Carolina Department of Corrections ("SCDC") pursuant to orders of commitment from the Clerks of Court of Florence and Darlington counties.  During the May 2002 term of the Darlington County Grand Jury, Petitioner was indicted on two counts of armed robbery (Indictments 2002-GS 16-875 and 881).  In June 2002, a Florence County Grand Jury indicted Petitioner on two additional counts of armed robbery, two counts of possession of a weapon during the commission of a violent crime, and failure to stop for a blue light  (Indictment 2002-GS-21-741).  Elaine Cooke, Esquire, represented Petitioner on the Darlington charges, and B. Scott Suggs, Esquire, represented Petitioner on the Florence charges.  On August 6, 2002, Petitioner pled guilty in Florence County to four counts of armed robbery–two from Florence County and two from Darlington County.  The Honorable James E. Brogdon, Circuit Court Judge, heard and accepted the plea.[1]  Judge Brogdon sentenced Petitioner to fifteen (15) years imprisonment on each count, with all sentences concurrent.  Petitioner did not filed a direct appeal.

#### B.  Petitioner's Application for Post-Conviction Relief

Approximately two and one-half years later, on March 8, 2005, Petitioner filed a *pro se* application for post-conviction relief ("PCR"), in which he alleged the following claims:

> (1)  The Circuit Court lacked Subject Matter Jurisdiction to indict and or accept the petitioner's guilty plea for (2) two counts of Armed Robbery pertaining to S.C. Code § 16-11-330(A), (2) two counts of possession of a weapon during commission of a crime of violence pertaining to S.C. Code § 16-23-490, and (1) one count of failure to stop for a blue light pertaining to S.C. Code § 56-5-570 of the Code of Laws of South Carolina 1976 as amended in violation of S.C. Code § 17-19-10 and § 17-19-20 of South Carolina Code of Laws.

---

[1] Respondents were unable to provide the court with a copy of the plea proceedings.  It appears that because Petitioner did not file an appeal, and did not have a PCR hearing on the merits, a transcript never was generated.  Although Counsel for Respondents advised the Court in their Motion filed on July 21, 2006 that they had asked the court reporter to attempt to locate the tapes and generate the transcript, the transcript was unable to be supplied to the Court as of the time of the submission of this Report and Recommendation.

> (2)  The Circuit Court [...erred...] accepting the petitioner's guilty plea and sentencing him . . .[to] (2) two counts of armed robbery . . ., (2) two counts of possession of a weapon during the commission of a crime of violence . . ., and (1) count of failure to stop for a blue light . . . in violation of the petitioner's 1st and 14th Amendment Rights of the U.S. Constitution and the Equal Protection Clause . . . .;
>
> (3)  The warrants... were used in acts of prosecutional [sic] misconduct, in violation of the petitioner's rights of Due Process, to deceive and manipulate the petitioner into giving a guilty plea that was not freely, knowingly, voluntarily or intelligently given, due to the circuit court lacking subject matter jurisdiction to entertain them due to their being established and submitted before the court and petitioner in violation of Rules of Criminal Procedure Rule 3(c) and Due Process;
>
> (4)  Counsel for the petitioner was inept and constitutionally ineffective and erroneously advised the petitioner to plea guilty in violation of the petitioner's 1st, 5th and 14th Amendment Rights of the U.S. Constitution;
>
> (5)  The petitioner's rights of Due Process were violated pertaining to Disclosure and *Brady v. Maryland* and the petitioner was advised to erroneously plea without being given his full discovery evidence;
>
> (6)  The indictments of South Carolina took away the petitioner's presumption of innocence and shifted the burden of proof, thus they mentally and psychologically coerse [sic] and forced the petitioner into an involuntary, unknowingly, not freely given, unintelligently given guilty plea, and violated his Rights of Due Process.  (PCR attachments, ¶ 1-3).

The State made its return on May 19, 2005, and moved to dismiss the application for PCR for failure to file within the state statute of limitations, and failing to present a cognizable subject matter jurisdiction claim sufficient to overcome the statute of limitations bar.  On May 24, 2005, the Honorable J. Michael Baxley, Chief Administrative Judge of the Twelfth Judicial Circuit, issued a Conditional Order of Dismissal expressing his intent to dismiss the action for failure to file within the statute of limitations, and allowing Petitioner twenty (20) days after service to show cause why the order should not become final.  On June 14, 2005, Petitioner filed a document titled, "Motion To Be Heard Article 1 Sec 18 ."  In addition, Petitioner attempted to file an appeal which was dismissed without prejudice to his ability to appeal from a final decision.

On September 2, 2005, the PCR judge issued a final order dismissing the action for failure to timely file.  Petitioner sought to appeal the decision.  On September 28, 2005, Petitioner filed a notice of intent to appeal in the Supreme Court of South Carolina.  On

September 29, 2005, the Court issued a letter advising Petitioner that he must provide a written explanation, pursuant to Rule 227(c) of the South Carolina Appellate Court Rules, to support his claim that the dismissal pursuant to the statute of limitations was improper.[2]

On October 13, 2005, Petitioner filed a document titled "Motion to Motion" in response. On October 18, 2005, the Supreme Court of South Carolina dismissed the appeal, and subsequently issued the remittitur on November 10, 2005.

## IV.  FEDERAL COURT HISTORY

On April 26, 2006, Petitioner filed this Petition for a writ of *habeas corpus* (the "Petition") against the State of South Carolina, the Warden of Lieber Correctional Institution, and Henry McMaster, the Attorney General of the State of South Carolina (collectively, the "Respondents").[3] [1-1]. The Petition set forth fifteen (15) grounds for relief, which are set forth in their entirety below:

> (1) Was the Applicant's 5th, 6th, and 14th Amendment Rights of the U.S. Constitution and his Rights of Due Process violated by the indictment's failure to allege the "state" where the crimes took place in the body of the charging instrument?
>
> (2) Was the Applicant's 5th, 6th, 14th Amendment Rights of the U.S. Constitution and his Rights of Due Process violated by the prosecution making use of warrants that were never indicted and or for which there was no waiver of presentment signed for, to obtain the Applicant's guilty plea?
>
> (3) Was the Applicant's 5th, 14th Amendment Rights and his Rights of Due Process violated in indicting and or accepting the Applicant's guilty plea where there was a "procedural defect" in establishing the indictment(s) because the prosecution went beyond the time frame allotted by law to take action on the warrant(s)?

---

[2]   Rule 227. CERTIORARI TO REVIEW POST-CONVICTION RELIEF ACTIONS

. . .

( c)  Explanation Required. If the lower court has determined that the post-conviction relief action is barred as successive or being untimely under the statute of limitations, the petitioner must, at the time the notice of appeal is filed, provide an explanation as to why this determination was improper. This explanation must contain sufficient facts, argument and citation to legal authority to show that there is an arguable basis for asserting that the determination by the lower court was improper. If the petitioner fails to make a sufficient showing, the notice of appeal may be dismissed.

[3]   Petitioner does not have the benefit of the holding in *Houston v. Lack*, 487 U.S. 266 (1988) with respect to the "delivery" date of his Petition because the Petition was mailed form outside of the correctional institution.

(4) Should the Applicant's Application be dismissed due to his not being in compliance to the statue of limitations?

(5) Was the applicant's guilty plea knowingly, voluntarily and intelligently given when he was not advised of the critical elements of the offense(s) on the record?

(6) Was the Applicant's guilty plea knowingly, voluntarily and intelligently given when he was not advised of the minimum and maximum sentences to the offenses on the Record?

(7) Did the trial court lack Subject Matter Jurisdiction due to the indictment defects that are embodied within the revised Petition dated March 10, 2006?

(8) Was the Applicant's 5th, 6th, 14th Amendment Rights of the U.S. Constitution and his Due Process Rights violated by the defect in the indictment(s) Armed Robbery's failure to allege all the elements of the offense(s) in the body of the charging instrument?

(9) Was the Applicant's 5th, 6th, 14th Amendment Rights of the U.S. Constitution and his Rights of Due Process violated by the constructive amendment in the indictment(s) for Armed Robbery in that they did not fully and properly allege the element of aspiration [sic]?

(10) Did the trial court lack subject matter jurisdiction, due to the "procedural defect" in that there was no order of continuance issued to continue the cause before the court?

(11) Was the Applicant's 5th, 6th, 14th Amendment Rights of the U.S. Constitution and his Rights of Due Process violated in accepting the Applicant's guilty plea when there was a "procedural defect" and Due Process violation in the establishing of the indictments by their not being properly filed with the Clerk of Court?

(12) Was the Applicant's Rights of Due Process violated pertaining to disclosure and the Applicant erroneously advised to plea guilty without having full factual knowledge related to said discovery evidence?

(13) Was counsel for the applicant inept and constitutionally ineffective in violation of the Applicant's 5th, 6th, 14th Amendment Rights and his Rights of Due Process, and by such he erroneously advised the Applicant to give a guilty plea that was not freely, knowingly, voluntarily and intelligently given?

(14) Did the indictments of South Carolina as constructed possess a constitutional structural error and or defect, which by their language and or charge contained therein, create and or form conclusive presumption(s), that took away the applicant's presumption of innocence and automatically shift the burden of persuasion to the defendant in regards to the crucial elements of dispute in violation of the Applicant's 5th, 6th, 14th Amendment Rights of the U.S. Constitution as well as Article IV § 2, and the laws of Due Process.

(15) Did the S.C. Supreme Court abuse their discretionary power and in such the trial court was deprived of the right to invoke and or enact its Subject Matter Judiciary powers, due to the indictment(s) failure to fully apprise the Applicant of what he is called upon to meet in violation of the Applicant's 5th, 6th, 14th Amendment Rights of the U.S. Constitution and the laws of Due Process because the structural constitutional error and or defect in the construction of the indictment(s) by their language and or charge  shift the burden of persuasion?  (Habeas Attachment, ¶ 4-8).

On May 2, 2006, the undersigned issued an Order which authorized service on the Respondents and notified Petitioner of the change of address rule.  [5-1]  Thereafter, the

Respondents moved for an enlargement of time in which to respond to the Petition.  [9-1]  The motion was granted by the undersigned on June 21, 2006.  [11-1]  On July 21, 2006, in response to Petitioner's Petition for *habeas corpus* relief, the Respondents filed a Return and Memorandum of Law in support of Motion for Summary Judgment and a Motion for Summary Judgment (the "Motion for Summary Judgment").  [12-1; 13-1]

On July 25, 2006, the undersigned issued an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), notifying Petitioner of the summary judgment dismissal procedure and the possible consequences if he failed to respond adequately to the Motion for Summary Judgment.[4]  [15-1]  On August 17, 2006, Petitioner filed a sixty-six (66) page response to Respondents' Motion for Summary Judgment.  [16-1]  Thereafter, on August 25, 2006, the undersigned issued an Order requesting that Petitioner re-file his response to the Motion for Summary Judgment by September 5, 2006 and adhere to the thirty-five (35) page limit pursuant to the Local Civil Rules, D.S.C.  [17-1]  On September 5, 2006, Petitioner filed a "Motion to Motion" requesting leave to file a response in excess of thirty-five (35) pages, contending that his handwritten document would have been no longer than twenty-five (25) pages had he had access to a typewriter or computer.  [18-1]  Again, the undersigned denied Petitioner's Motion to file a pleading in excess of the number of pages permitted by the Local Civil Rule, and requested that Petitioner re-file his pleading on or before September 12, 2006.  [19-1]  Petitioner failed to file any pleading after the Court issued its Order.

## V.  THE ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT OF 1996

### A.  Application to the Present Petition

The present habeas corpus Petition was filed on April 26, 2006.  Because Petitioner filed his Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996

---

[4] The explanation to the *pro se* litigant is required by *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), which was a civil rights case.  The same procedure has been held to apply in federal *habeas corpus* cases under *Webb v. Garrison*, No. 77-1855 (4th Cir., decided July 6, 1977).

("AEDPA"), this Court's review of his collateral attack on his criminal conviction is governed by the parameters set forth in the AEDPA, which amended Section 2254. *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir.), *cert. denied*, 521 U.S. 371 (1998); *Green v. French*, 143 F.3d 865 (4th Cir. 1998), *cert. denied*, 525 U.S. 1090 (1999). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2).

The first requirement has been explained by the United States Supreme Court in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (plurality opinion). Writing for a plurality of the Court, Justice O'Connor held that, "§ 2254(d)(1) places a new constraint on the power of a federal habeas corpus court to grant a state habeas petitioner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1) the writ may issue only if one of the following two conditions is satisfied-the state-court adjudication resulted in a decision that (1) 'was contrary to . . . clearly established federal law as determined by the Supreme Court of the United States,' or (2) 'involved an unreasonable application of . . .clearly established Federal law as determined by the Supreme Court of the United States." *Id.* at 1523 (O'Connor, J., concurring in judgment).

With respect to the "unreasonable application" clause, Justice O'Connor further explained that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 1522. In sum, the AEDPA amendments exalt the role that a state court's decision plays in a habeas decision by specifically directing the federal court to make the state court decision the

starting point of federal review; only if that decision deviates from the paradigm recited in Section 2254(d) may a habeas court grant relief.

### B.  Exhaustion of State Court Remedies

Relief under Section 2254 may be had only after a *habeas* petitioner has exhausted his state court remedies:  "It is the rule in this country that assertions of error in criminal proceedings must first be raised in state court in order to form the basis for relief in *habeas*. Claims not so raised are considered defaulted."  *Breard v. Green*, 523 U.S. 371, 375 (1998), *citing Wainwright v. Sykes*, 433 U.S. 72 (1977); *see also* 28 U.S.C. § 2254(b).  This Court's exhaustion requirements under Section 2254 are fully set forth in *Matthews v. Evatt*, 105 F.3d 907, 910-911 (4th Cir.) (citations omitted), *cert. denied*, 522 U.S. 833, 118 S.Ct. 102, 139 L.Ed.2d 57 (1997):

> In the interest of giving state courts the first opportunity to consider alleged constitutional errors occurring in a defendant's state trial and sentencing, a § 2254 petitioner is required to "exhaust" all state court remedies before a federal district court can entertain his claims.  Thus, a federal habeas court may consider only those issues which have been "fairly presented" to the state courts[.]
>
> To satisfy the exhaustion requirement, a habeas petitioner must fairly present his claim to the state's highest court.  The burden of proving that a claim has been exhausted lies with the petitioner.
>
> The exhaustion requirement, though not jurisdictional, is strictly enforced[.]

In order to exhaust his claims in state court, a South Carolina petitioner must file an application for relief under the South Carolina Post Conviction Procedure Act, S.C. Code Ann. §§ 17-27-10–160 (the "Act").  The applicant may allege constitutional violations in a PCR proceeding, but only if the issue could not have been raised by direct appeal.  *Gibson v. State*, 329 S.C. 37, 41, 495 S.E.2d 426, 428 (1998), *citing* S.C. Code Ann. §§ 17-27-20(a)(1), (b). "Exhaustion includes filing of an application, the rendering of an order adjudicating the issues, and petitioning for, or knowingly waiving, appellate review."  *Gibson v. State*, 329 S.C. at 42, 495 S.E.2d at 428.  As the South Carolina Supreme Court has explained:  "[W]hen the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the

litigant shall be deemed to have exhausted all available state remedies. *In Re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 321 S.C. 563, 564, 471 S.E.2d 454, 454 (1990).

Just as the exhaustion doctrine requires that a claim be fairly presented to all appropriate state courts before it is raised in a Section 2254 petition, if a claim has not been presented but no state remedy remains available, the claim will be considered procedurally defaulted. *Teague v. Lane*, 489 U.S. 288 (1989). A claim that has been procedurally defaulted in state court usually will not be reviewed in a Section 2254 petition.

However, the requirement of exhaustion is not jurisdictional, and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. *See Granberry v. Greer*, 481 U.S. 129, 131, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1989). A federal court will hear a procedurally defaulted claim if the petitioner "'can demonstrate <u>cause</u> for the default <u>and actual prejudice</u> as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice.'" *Matthews v. Evatt*, 105 F.3d at 916, *quoting Coleman v. Thompson*, 501 U.S. at 750 (emphasis supplied by the undersigned). Unless a petitioner can demonstrate both "cause" and "prejudice", this Court will be procedurally barred from considering those claims that are procedurally defaulted. *Daniels v. Lee*, 316 F.3d 477, 486 (4th Cir. 2003). Second, a petitioner may rely on the doctrine of actual innocence. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Waye v. Murray*, 884 F.2d 765, 766 (4th Cir. 1989), *cert. denied*, 492 U.S. 936 (1989).

### C. The AEDPA's Statute of Limitations

The AEDPA provides that "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). The limitations period begins to run "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

This Court's review of the record and the relevant case law leads it to the inexorable conclusion that the Petition was filed beyond the limitations period and it should be dismissed on that basis.  Petitioner did not file a direct appeal; thus his pleas and the state court's sentences of August 6, 2002 were finalized ten days later, on August 16, 2002.  *See* Rule 203(b)(2), SCACR ("After a plea or trial resulting in conviction . . ., a notice of appeal shall be served on all respondents within ten (10) days after the sentence is imposed").  Petitioner therefore had until August 16, 2003 to file his federal habeas corpus action, unless the period was at any time tolled.  *See, e.g., Hernandez v. Caldwell*, 225 F.3d 435 (4th Cir. 2000); *Brown v. Angelone*, 150 F.3d 370 (4th Cir. 1998).  However, the tolling rule is not applicable in this case because at the time Petitioner filed for PCR, on March 8, 2005, his action was time-barred.  *See* Section 17-27-45(A);[5] *see also Wade v. State*, 348 S.C. 255, 264, 559 S.E.2d 843, 847 (2002) ("An individual under PCR effectively is granted one chance to argue for relief and must do so within a year of his final appeal").  Indeed, Petitioner's state PCR application was dismissed for failure to file within the time period set by the state statute of limitations set forth in S.C. Code § 17-27-45(A).  If a state court rejects petitioner's PCR application as untimely, it cannot be considered 'properly filed,' and he is not entitled to statutory tolling under § 2244(d)(2)."  *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005).  Accordingly, the untimely filing of Petitioner's PCR application does not toll the statute of limitations, and has no consequence in this case.

In the present case, however, Petitioner filed the instant action on April 26, 2006. Petitioner is well past the one-year limitations period.  In total, from the time his guilty pleas became final on August 16, 2002, to the filing of the instant action on April 26, 2006, one thousand three hundred and forty-nine (1,349) days of time lapsed.  Subtracting the three hundred and sixty-five (365) days in which Petitioner had to timely file, the action is nine

---

[5] "An application for relief filed pursuant to this chapter must be filed within one year after the entry of a judgment of conviction or within one year after the sending of the remittitur to the lower court from an appeal or the filing of the final decision upon an appeal, whichever is later."

hundred and eighty-four (984) days late. Having missed the filing period by well over two years, Petitioner's action is barred by the AEDPA's statute of limitations.

## RECOMMENDATION

For the foregoing reasons, it is recommended that the Respondents' Motion for Summary Judgment **[13-1] should be granted, and that Petitioner's Petition [1-1] should be denied and dismissed.**

S/George C. Kosko
United States Magistrate Judge

September 19, 2006

Charleston, South Carolina

**Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"
& The Serious Consequences of a Failure to Do So**

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of the date of its service.  28 U.S.C. § 636 and Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail.  Fed. R. Civ. P. 6.  Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed.  Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3, 1992 U.S.Dist. LEXIS® 6243 (S.D.N.Y. 1992).  A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge.  See Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

During the period for filing objections, **but not thereafter**, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections.  **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.**  See Keeler v. Pea, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995).  Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge.  See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985).  Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object.  In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues.  Howard v. Secretary of HHS, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991).  See also Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985).  In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> **A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object.  The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless.  * * *  This duplication of time and effort wastes judicial**

>**resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.**

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

>**Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.**

*See also* Branch v. Martin, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review").

**This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections.** *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

>**Larry W. Propes, Clerk**
>**United States District Court**
>**Post Office Box 835**
>**Charleston, South Carolina 29402**